(SPACE BELOW FOR FILING STAMP ONLY)

Mark A. Campbell (SB# 93595)
Suzanne M. Nicholson (SB# 208163)
**Murphy, Campbell, Alliston & Quinn**
8801 Folsom Boulevard, Suite 230
Sacramento, CA  95826

Telephone: (916) 400-2300
Fax: (916) 400-2311
Mcampbell@murphycampbell.com
Snicholson@murphycampbell.com

Attorneys for PROGRESSIVE MARKETING, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROGRESSIVE MARKETING, Inc.<br><br>Plaintiff,<br><br>vs.<br><br>SPROPARTS llc, NUOVA RICAMBI Srl, and<br>LA MARZOCCO USA, LLC<br><br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, PROGRESSIVE MARKETING, Inc., for its complaint against defendants, SPROPARTS LLC, NUOVA RICAMBI Srl, and LA MARZOCCO USA, LLC (collectively, "Defendants"), alleges as follows:

## THE NATURE OF THE ACTION

1.      Plaintiff, PROGRESSIVE MARKETING, Inc. owns valuable rights in the trademark "NUOVA RICAMBI USA", (The Trademark) which it has used widely and continuously for over nineteen years to market and sell replacement parts and accessories for espresso machines. Defendant NUOVA RICAMBI Srl is the successor in interest to Nuova Ricambi Snc.   In 1998 Nuova Ricambi Snc sold the trademark to PROGRESSIVE MARKETING, Inc through its agents Marcello Zanesi, Silvano Meconi, and alter ego Nuova Ricambi USA LLC. PROGRESSIVE MARKETING, Inc has also subsequently acquired a federal registration, and certificate of incontestability for the trademark.

Murphy, Campbell, Alliston & Quinn

2.      Sixteen years after selling the trademark, the Defendants NUOVA RICAMBI Srl, and LA MARZOCCO USA, LLC, agreed to set up a third entity, the Defendant SPROPARTS LLC, and all three join together to willfully trample on PROGRESSIVE MARKETING, Inc's trademark rights by wrongfully using the marks "NUOVA RICAMBI", "NUOVA RICAMBI SRL", and "NR" to their advantage in direct competition with PROGRESSIVE MARKETING, Inc. By their actions, Defendants are liable for trademark infringement, false designation of origin, false descriptions, unfair competition, and other wrongful acts in violation of the Trademark Act of 1946, as amended (the Lanham Act, 15 U.S.C. §1051, *et seq.*) and for related claims of trademark infringement, breach of contract, unfair competition, unjust enrichment, and misappropriation under state law and the common law, causing PROGRESSIVE MARKETING, Inc great financial damage.

3.      By virtue of Defendants' significant marketing budgets, and their acting with a unified purpose, Defendants' use of "NUOVA RICAMBI", "NUOVA RICAMBI SRL", and "NR" has begun to saturate the market. Members of the relevant trade have already expressed a mistaken belief as to the origin, sponsorship, or approval of the products the Defendants' sell, and a mistaken belief that the Plaintiff and the Defendants are somehow related, affiliated, connected, on associated. As a result, PROGRESSIVE MARKETING, Inc is losing the value of its trademark, its product identity, and control over its goodwill and reputation. Accordingly, the harm suffered by PROGRESSIVE MARKETING, Inc because of Defendants' misconduct is irreparable, and Defendants' wrongful activities will continue unless enjoined by the Court. The harm suffered by PROGRESSIVE MARKETING, Inc because of Defendants' misconduct is irreparable, and Defendants' wrongful activities will continue unless enjoined by the Court.

## PARTIES

4.      PROGESSIVE MARKETING INC., (hereinafter "Progressive") is a corporation organized and existing under the laws of the State of California, having a principal place of business 4125 Delmar Avenue, Suite 3, Rocklin, California.

COMPLAINT
DEMAND FOR JURY TRIAL

5.      Upon information and belief, Defendant NUOVA RICAMBI Srl, hereinafter "Nuova Ricambi Italy" is an Italian corporation, with an address and principal place of business located at 20061Carugate (MI) – Italy, Via Dei Mille, 20.

6.      Upon information and belief, Defendant SPROPARTS LLC, hereinafter "Sproparts" is a limited liability company having an address and principal place of business at 199632 14th Ave. NW, Shoreline, Washington, and a registered agent for service of process with an address at PR Corp Services Inc., 10900 NE 4th St., Suite 1850, Bellevue, Washington, 98004.

7.      Upon information and belief, Defendant LA MARZOCCO LLC, hereinafter "La Marzocco" is a limited liability company having an address and principal place of business at 1553 NW Ballard Way, Seattle, Washington, 98107, and has a registered agent for service of process in California, being Michael L. Lanz, with an address at 2233 E Crany St., in Pasadena, California, 91104 at PR Corp Services Inc.

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1338 and 15 U.S.C. §1121 because Progressives' claims arise under the Trademark Act of 1946, as amended, 15 U.S.C. §§1051, *et seq.* The Court has supplemental jurisdiction over the state and common law claims under 28 U.S.C. §1338(b) and 28 U.S.C. §1367(a). The court also has subject matter jurisdiction under 28 U.S.C. §1332, as there is complete diversity of citizenship between all the Plaintiffs and all the defendants.

9.      The Court has personal jurisdiction over Defendants because each and all of the Defendants; (a) are doing business in the State of California; (b) have transacted business within the State of California; (c) have infringed Progressive's trademark and otherwise violated its trademark rights within the State and (d) have violated Progressive's trademark rights outside the State causing injury to Progressive's property within the State.

10.      In addition, the predecessor in interest of Nuova Ricambi Italy entered into a contract in the Eastern District of California which among other things provided for sale of the trade name "NUOVA RICAMBI USA" to Progressive. This sale was accomplished through a

MURPHY, CAMPBELL, ALLSTON & QUINN

COMPLAINT
DEMAND FOR JURY TRIAL

limited liability company agent and alter ego which was registered with the Secretary of State of California. The contract was to be performed in California, and was breached in California.

11.     In addition, defendant La Marzocco is registered with the Secretary of State of California as a foreign Limited Liability Company present and doing business in California.

12.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and (c) because each of the Defendants does business in, has substantial contacts with and/or may be found in the Eastern District of California, and a substantial portion of the events at issue have arisen and will arise in this judicial district.

## **FACTS COMMON TO THE COUNTS**

<u>PROGRESSIVE'S PURCHASE AND REGISTRATION OF THE TRADEMARK</u>

13.     Marcelino Zanesi ("Marcelino") founded and owned Nuova Ricambi Snc, an Italian partnership ("the Partnership"), located near Milan. That business sold parts for espresso machines. Progressive is informed and believes that sometime before 1995 Marcelino's son, Marcello Zanesi ("Marcello") joined the Partnership as an employee and partner.

14.     Progressive is further informed and believes that sometime in 1995 Marcelino and Marcello agreed they would establish a subsidiary in California that would serve as the American presence of the parent Partnership, and act as its agent and distributor. For this purpose they formed Nuova Ricambi USA LLC, hereinafter "Nuova Ricambi USA". They registered that limited liability company with the California Secretary of State on June 9, 1995. Silvano Meconi, who Progressive is informed and believes was an employee of Nuova Ricambi Italy and/or otherwise a business associate of Marcelino, came with Marcello to California to assist with this expansion of Nuova Ricambi Italy.  He and Marcello were named as managers of Nuova Ricambi USA in its articles of organization. They located first in Oakland and then later in Concord. At all times mentioned in this complaint, Marcello Zanesi and Silvano Meconi acted as the agents of both Nuova Ricambi Italy and Nuova Ricambi USA. At all times mentioned in this complaint, Nuova Ricambi USA acted as the agent of Nuova Ricambi Italy.

MURPHY, CAMPBELL, ALLSTON & QUINN

15.     Progressive is informed and believes, Nuova Ricambi Italy, directly or through Marcelino and/or Marcello, provided all, or nearly all, the working capital, and credit necessary to lease facilities, and acquire equipment and inventory, owned large and substantial amounts, if not all, of the membership interests of Nuova Ricambi USA, had working voting control of that limited liability company, and dominated and controlled its management and business policy.  Nuova Ricambi USA was at all times during its existence, in truth and in fact, the alter ego of Nuova Ricambi Italy, such that there has, at all times herein mentioned, existed a unity of interest in ownership between all and each of them, such that any separateness has ceased to exist in that said entity was and is so completely dominated and controlled and managed and operated so as to suit the convenience of the Defendant Nuova Ricambi Italy such that adherence to the fiction of any separate existence of Nuova Ricambi USA, as an entity distinct from Nuova Ricambi Srl would permit an abuse of the Corporate privilege and would sanction fraud and promote injustice.  Progressive is also informed and believes Nuova Ricambi USA was upon formation, and thereafter, dramatically undercapitalized. In order to avoid a miscarriage of justice, and perpetuation of a fraud, by misuse of the limited liability company form of business, Nuova Ricambi USA, LLC and the Defendant Nuova Ricambi Italy should be treated as the alter egos of one another.

16.     On or about August 13, 1998, the decision was made to sell the American assets of the enterprise, cancel the California Limited Liability Company they had formed, and return to Italy. Marcello Zanesi and Silvano Meconi approached Progressive and, acting on behalf of both Nuova Ricambi Italy and Nuova Ricambi USA offered to simultaneously sell the assets they accumulated and used in the United States, including the trade name "Nuova Ricambi USA", and grant Progressive an exclusive distributorship for the entire USA for the entire catalogue of espresso machine parts and related equipment, which would be shipped to Progressive from Italy.  They reserved from this exclusive distributorship only the rights to sell directly to two companies in America, La Marzocco International and Armando Espresso. A price was agreed upon and three documents were created to memorialize the agreement; Attachment A which is entitled "Agreement for Purchase and Sale of Assets", Attachment B,

- 5 -

which is entitled "Bill of Sale", and Attachment C, which is entitled "Agreement U.S.A. Market". Marcello Zanesi and Silvano Meconi, signed these on behalf of Nuova Ricambi Italy and Nuova Ricambi USA.

17.     The Bill of Sale contains an "Exhibit A" which itemizes the assets Progressive purchased and allocates a portion of the purchase price to each item listed. Item 21 is " 'Nuova Ricambi USA, LLC' tradename and goodwill of business"; $30,000 is allocated for this item.

18.     On November 30, 1999, a certificate of cancellation of Nuova Ricambi USA LLC, was filed with the California Secretary of State.

19.     On or about April 13, 1999, promptly upon returning to Italy, Marcello Zanesi formed the defendant Nuova Ricambi Srl (Nuova Ricambi Italy), which is the Italian equivalent of a Limited Liability Company, which received at or about that time an assignment of all of the assets of Nuova Ricambi S.N.C, the Italian partnership through which the family business was previously operated. That same business continued to be operated in this new LLC form, and sold goods to Progressive pursuant to the August 13, 1998 contract for many years thereafter.

20.     Progressive is the owner of U.S. Trademark Registration No. 3,873,210 for the trademark "Nuova Ricambi USA" for Int'l Class 11 on the Principal Register. Attachment D is a copy of the trademark registration certificate. That registration has become incontestable.

PROGRESSIVE'S VALUABLE TRADEMARK

21.     Promptly after entering into the August 13, 1998 agreement described above, Progressive began to do business using the Trademark it had purchased, "Nuova Ricambi USA". It has used the mark continuously ever since then to advertise and sell espresso machine parts, related equipment, and accessories, to customers all over the United States. Many of its customers are espresso machine repair businesses who desire convenience, fair pricing, promptness, dependability, accuracy, and the sense when purchasing parts that the seller knows their business and is sincerely interested in their success. By providing these things over the almost twenty years that have passed since it purchased the trademark,

COMPLAINT
DEMAND FOR JURY TRIAL

Progressive has built a substantial base of loyal customers who identify the company by the Trademark.

22.     A strong association exists between Progressive's Trademark and not only the espresso parts and accessories it supplies, but operational excellence. Progressive has deliberately and consistently reinforced such association as follows:

(a) Since 1998, Progressive has spent substantial amounts of money on advertising using the Trademark;

(b) The Trademark is prominently featured on all of Progressive's publications;

(c) The Trademark is present at major coffee industry trade shows and conventions;

(d) Progressive has made extensive use of the Trademark in connection with the Internet for many years, using it on its Internet web site at www.nuovaricambi.com . It has owned the domain name "Nuovaricambi.com" for many years. Considerable money, time, and effort has been spent on the development of this website over the years.

23.     As a result of the widespread promotion, marketing, advertising, use and display of the Trademark over the past nineteen plus years, (a) the public and the trade have come to recognize that the mark refers to high quality products and service emanating from a single source of origin, and (b) said mark has gained secondary meaning and extensive goodwill.

DEFENDANTS' VIOLATIONS OF PLAINTIFF'S TRADEMARK RIGHTS, BREACH OF CONTRACT, AND UNFAIR COMPETITION, UNDER FEDERAL AND STATE LAW

A. Packaging

24.     Despite Defendants' actual knowledge of Progressive's prior and superior trademark rights, as well as Progressive's clear and unambiguous objections to such, upon information and belief, Defendants have launched a concerted, coordinated, joint effort to violate those rights in order to acquire for themselves the value Progressive has worked hard and long to build into the trademark.

MURPHY, CAMPBELL, ALLSTON & QUINN

25.     As stated above, Nuova Ricambi Italy reserved 2 customers from the exclusive distribution rights granted to Progressive under the August 13, 1998 agreement. One of them being La Marzocco International. That company was in the business of manufacturing and selling espresso machines in the United States, and elsewhere. Defendant Nuova Ricambi Italy supplied to La Marzocco some of the components for the machines. Progressive is informed and believes that in 2009 that company established a subsidiary, the Defendant La Marzocco USA LLC, to act as a distributor in the United States.

26.     At some point in time not yet known to Progressive, La Marzocco began to deliver to customers within California, and other places in the United States, espresso parts packaged in white shipping paper wrappers bearing in brown print the words "Nuova Ricambi". The designation "Srl" does not appear following the use of these words.

27.     In addition, some of the parts bear an embossed symbol combining the letters "N" and "R', which is meant to mean, and is well understood by the public and relevant trades to mean "Nuova Ricambi".

28.     These paper-wrapped parts are shipped in transparent plastic bags bearing the words "La Marzocco", which are then in turn placed in cardboard shipping boxes bearing those words. Progressive is informed and believes Nuova Ricambi Italy is shipping them to La Marzocco, wrapped and/or embossed in this fashion, knowing that they will then be shipped to 3rd party purchasers, and La Marzocco is failing to remove the wrappers and shipping parts out to customers in California, and elsewhere in America, bearing the embossment in violation of Progressive's trademark and contract rights.

29.     In September of 2016 Progressive's president, Mr. Gene Lemos, called Joe Monaghan, the president of Defendant La Marzocco (and also sole manager of the Defendant Sproparts LLC) and advised him that this manner of packaging of parts was in violation of Progressive's trademark rights and asked him to stop. Mr. Monaghan claimed not to know it was happening and said he would look into it. He never called back.

30.     In addition, Progressive is informed and believes, that La Marzocco is placing in the boxes in which it ships complete espresso machines post cards which advertise

COMPLAINT
DEMAND FOR JURY TRIAL

defendant Sproparts, by use of the words "Nuova Ricambi". Progressive is informed and believes these cards have been sent in this fashion to customers in California, and elsewhere in the United States.

31.     Sometime in 2014 Marcello Zanesi, still CEO of the Defendant Nuova Ricambi Italy, called the president of Progressive and told him he was going to buy 40% of Progressive. He was told Progressive was not interested.

32.     A few months later, on February 19, 2015 Nuova Ricambi Italy filed with the USPTO an application to extend it's WIPO registration of the mark "Nuova Ricambi". The application was refused by office action taken on July 20, 2015. Not surprisingly, one reason for its refusal was a finding that there was a likelihood of confusion with Progressive's trademark "Nuova Ricambi".

33.     On December 29, 2015, about four months after the USPTO rejection, a certificate of formation was recorded with the Washington Secretary of State's office for the Defendant Sproparts, LLC. On March 17, 2016 the "Initial Report" filed with the Washington Secretary of State identified Joe Monaghan, as Manager, and his home address as the entity's principal place of business. Joe Monaghan is also the President of the Defendant La Marzocco USA, LLC. Progressive is informed and believes that two, and possibly three, of the employees of Defendant Sproparts are former employees of Defendant La Marzocco USA, LLC. Progressive is informed and believes that La Marzocco USA, LLC. has and presently is collaborating, cooperating, and worked in concert with the Defendant Nuova Ricambi Italy to form, fund, assist, aid, abet, advise, enable, control and/or operate Defendant Sproparts LLC so as to violate Progressive's trademark and contract rights, and to compete with Progressive unfairly.   They are thereby willfully taking from Progressive, without compensation, a valuable part of the brand equity, customer base, and income stream built by Progressive with almost twenty years of effort.

34.     On February 9, 2016, about five weeks after the Defendant Sproparts LLC was formed, Progressive received an email from Marcello Zanesi, now CEO of Defendant Nuova Ricambi Italy, informing Progressive that he had signed "an exclusive contract for a new

COMPLAINT
DEMAND FOR JURY TRIAL

distributor" and offering to fill one last order conditioned on full payment in advance. This was apparently an attempt to terminate the August 13, 1998 exclusive distributorship agreement, but Nuova Ricambi Italy failed to comply with the termination provisions of that agreement.

B. Sproparts Mass Mailing and Packaging

35.     On May 12, 2016 Defendant Sproparts sent out a mass mailing of a postcard to potential customers, many of whom were customers of the Progressive. This postcard depicts, at the top, the Sproparts name and logo, then beneath it, "espresso machine parts," followed by "new, exclusive authorized US distributor for Nuova Ricambi". The postcard did not attempt to differentiate Nuova Ricambi Srl from Nuova Ricambi USA, LLC, it just uses the two words "Nuova Ricambi" which are the key elements of Progressive's trademark. Following this mass mailing campaign, Progressive was inundated with comments and questions from customers about Progressive's new "partner," or "office" in Seattle. It was clear this post card created confusion in the minds of its customers, confusion as to the origin of the goods being offered for sale by Sproparts, and also instilling the mistaken belief that Progressive was affiliated, associated with, or otherwise connected with Sproparts.

36.     Sproparts is participating in the same line of misconduct as La Marzocco, the other company run by Joe Monaghan.  It also ships out to its customers, in the Eastern District of California, and elsewhere in California, and the United States, espresso parts wrapped in paper and embossed just as described in paragraphs 26 through 28 above.

C. Internet commerce

37.     Defendant Nuova Ricambi Italy maintains an Internet web site at the URL "www.nuovaricambi.net", at which designation the term "Nuova Ricambi" is featured. This web site is accessible to residents of California, this District, and the United States in general.

38.     Defendant Nuova Ricambi Italy's domain name is confusingly similar to Progressive's trademark and is consciously aimed at the general public and relevant trade in California as well as elsewhere in the United States. The English version of this website appears immediately beneath the Italian version when one searches for the term "Nuova Ricambi".

COMPLAINT
DEMAND FOR JURY TRIAL

39.     Nuova Ricambi Italy's domain name is Progressive's trademark, with the lack of a space between the first two words and no "USA" at the end.  The opening page displays a banner menu at the top with a link to "espresso machine parts". The link takes the viewer to a catalogue of "exploded" views of espresso machine components. The catalogue, and the images of the parts, are organized according to the various manufacturers of the machines. These images are the same images as used on the Progressive's website except with the slight change of the brand name at the top of each drawing. The numbers on the drawings have "click through" functionality. Once the click through is utilized it leads to an expanded photograph of the part, the same as on Progressive's website, but with the trademark "Nuova Ricambi" superimposed in very large "ghost" letters over the part.

40.     Near the bottom of the opening page is a world map with the caption "Nuova Ricambi in the World" at the top, and beneath it the map contains approximately a dozen drop pins each of which can be clicked, leading to a description of a distributor. The Sproparts name, logo, and contact information appear for the United States. At the bottom of the contact information there is a hyperlink to an "orders@sproparts.com" email interface. Once that is clicked, an email interface appears with the "to" field pre-populated by "orders@sproparts.com. The web site aims directly at achieving sales to Californian and American customers of espresso parts through Sproparts, in direct competition with the Progressive. As stated above the website appears in English, provides the viewer with a catalogue with many, many pages, replete with parts which are identified as "Nuova Ricambi" then invites the viewer via a drop pin on the silhouette of the United States, which appears on the map of the world at the bottom of the first page, to place orders, by means of the email address link, for "Nuova Ricambi" parts to be sold to them by Defendant Sproparts LLC and shipped to them from that Defendant's location in Washington. Obviously, the more parts the defendant distributor sells, the more parts it in turn buy from Nuova Ricambi Italy, and the more that company profits from the twenty years of hard work the Progressive has spent in building up the goodwill associated with the trademark it purchased from this company's immediate predecessor in 1998.

COMPLAINT
DEMAND FOR JURY TRIAL

41.     Defendant Sproparts maintains an Internet web site at the URL "www.sproparts.com", at which designation the term "Nuova Ricambi" is featured. This web site is accessible to residents of California, this District, and the United States in general.

42.     Defendant Sproparts featured use of the phrase "Nuova Ricambi" is confusingly similar to Progressive's trademark and is consciously aimed at the general public and relevant trade in California as well as elsewhere in the United States. The content and graphics of Defendant Spropart's website are essentially a duplicate of the website used by Nuova Ricambi Italy, but the colors have been changed to primary red and blue, adopting the same color scheme as Progressive's website and logo, in lieu of Nuova Ricambi's use of brown and orange.

43.     This website displays the same catalogue as appears on Progressive, and Nouva Ricambi Italy, web sites. Sproparts web site even contains the "Nuova Ricambi in the World" map of the world with drop pins linking to email messages to distributors. Sproparts' website is replete with the use of Progressive's trademark. It repeatedly advises the viewer "Exclusive US Distributor of Nuova Ricambi Srl' on the website and on the face sheet of the digital and downloadable catalogues it offers for use in selecting parts for purchase. The message is the parts it is showing the viewer come from "Nuova Ricambi". This use of those two words is highly likely to confuse the public about the origin of the parts and sponsorship, and endorsement, affiliation, association, and connection between Progressive and Sproparts, as well Nuova Ricambi Italy.

44.     Progressive is informed and believes, that the Italian company has licensed for far below its market value, or simply given, Sproparts a right to use a copy of the Nuova Ricambi Italy website. The mass mailed post card sent out by Sproparts to Progressive's customers, and prospective customers, on May 12, 2016 makes reference to the Sproparts website. Progressive is informed and believes this interactive and dynamic website, containing very detailed and voluminous graphical depictions of replacement parts for many, many, different brands and models of espresso machines was up and running within a few months of the formation of Sproparts. This was a valuable benefit to Sproparts, providing a

- 12 -

Murphy, Campbell, Alliston & Quinn

presence of the internet very quickly after it commenced business, and quickly advanced the plan to benefit from Progressive's twenty years of hard work. Both defendants benefited when customers became confused about whether they are dealing with the American Nuova Ricambi USA or Nuova Ricambi Italy, or Sproparts, and whether and how those companies were affiliated, or otherwise connected so that a purchase from Sproparts would benefit the same company, Progressive, they had been dealing with in the past. This website arrangement indicates these two defendants are acting in concert to produce a powerful and ongoing violation of Progressive's trademark rights.

D. The Defendants' use of "NR"

45.    From about 2004 to about 2008, Progressive continuously used the acronym "NR" as an abbreviation for "Nuova Ricambi USA" in its website domain "NRUSA.biz.". Progressive has used this abbreviation to name the parts it sells since shortly after it started doing business, both in paper catalogues and on the internet.

46.    Progressive is informed and believes, and based thereon alleges, that during Progressive's use of the acronym "NR" in its domain name, defendant Nuova Ricambi Italy was fully aware of that use by Progressive within the United State and that all the Defendants were aware of its use by Progressive to name the parts it sells.

47.    On February 19, 2015 Nuova Ricambi Italy filed an application for extension of protection of the Nuova Ricambi Italy's Mark, which consists of an "N" and an "R" joined together do as to share one vertical line that represents both the rightmost vertical line of the "N" and the vertical line on the left side of the "R".

48.    This application was filed pursuant to Section 66(a) of the Trademark Act, Serial No. 79166354, as made evident by the publication of said mark in the Official Gazette in the March 1, 2016 issue.

49.    As stated by Nuova Ricambi Italy on December 7, 2015 in its response to the office action issued by the USPTO, "NR appearing in the [Mark] means or signifies or is a term of art for abbreviation of 'Nuova Ricambi', i.e. the Nuova Ricambi Italy's name in the

COMPLAINT
DEMAND FOR JURY TRIAL

MURPHY, CAMPBELL, ALLSTON & QUINN

relevant trade or industry or as used in connection with the goods/services/collective membership organization listed in the application."

50.     The meaning of the Nuova Ricambi Italy's Mark proffered by Nuova Ricambi Italy on December 7, 2015 is wholly included in, and is the same as, Progressive's Mark "Nuova Ricambi USA".

51.     Defendants' use of this "NR" mark is without the consent or permission of Progressive.

52.     Progressive's first use of the Progressive's Mark precedes both the filing of the application for extension of protection with the United States Patent and Trademark Office as well as the Nuova Ricambi Italy's first use of "NR" Mark in commerce within the United States.

53.     Nuova Ricambi Italy's use of the "NR" Mark does or is likely to falsely suggest a common ownership between Nuova Ricambi Italy and Progressive. Such use is likely to cause for consumers confusion, mistake and/or deception with regard to Nuova Ricambi Italy's Mark and Progressive's Mark.

54.     Consumers familiar with Progressive's Mark are likely to mistakenly believe that Nuova Ricambi Italy's products and services related to the "NR" Mark are sponsored, authorized, affiliated, associated with, approved, and/or otherwise sold by Progressive.

55.     Use of Nuova Ricambi Italy's "NR" Mark is likely to cause a significant level of sales by Nuova Ricambi Italy to consumers who would be confused by the use of the proposed mark into believing that Progressive is the source of Nuova Ricambi Italy's goods and/or services. Nuova Ricambi Italy's use of the "NR" mark is therefore likely to result in Nuova Ricambi Italy's trading off and benefiting from the goodwill associated with Progressive, resulting in unjust enrichment to Nuova Ricambi Italy.

56.     For the foregoing reasons, the use the "NR" mark by Nuova Ricambi Italy is contrary to the provisions of the Lanham Act, and Progressive has been and will be damaged thereby.

## CLAIMS FOR RELIEF

## COUNT ONE

## INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARK

57.     Plaintiff repeats and re-alleges Paragraphs 1 through 56 as if fully set forth herein.

58.     This is a claim for infringement of Plaintiff's federally registered "NUOVA RICAMBI USA" trademark arising under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

59.     Defendants' use of the designations "NUOVA RICAMBI SRL", "NUOVA RICAMBI", and "NR" are likely to cause confusion, cause mistake and/or cause deception as to the source of origin of their goods and services in that the public, the trade and others are likely to believe that Plaintiff's goods and services are provided by, sponsored by, approved by, licensed by, affiliated with or in some other way are legitimately connected to Defendants.

60.     By their actions, Defendants have deliberately sought to deceive and confuse the public.

61.     Defendants' use of the designations "NUOVA RICAMBI SRL", "NUOVA RICAMBI", and "NR" in connection with Defendants' goods and services has been made notwithstanding Plaintiff's well-known and prior established rights in the "NUOVA RICAMBI USA" trademark and with both actual and constructive notice of Plaintiff's federal registration rights under 15 U.S.C. § 1072.

62.     Plaintiff has no control over the nature or quality of Defendants' goods or services or any other aspect of the business conduct of Defendants. Plaintiff prides itself on its outstanding reputation for providing only the finest quality goods and services, and consumers have come to expect such from Plaintiff. Defendants' goods and services and business conduct are likely to reflect adversely on Plaintiff and its federally registered "NUOVA RICAMBI USA" trademark, thus hampering efforts by Plaintiff to continue to protect its reputation and to promote genuine goods and services under the "NUOVA RICAMBI USA" trademark.

63.     Defendants' use of the designations "NUOVA RICAMBI SRL", "NUOVA RICAMBI", and "NR" constitutes willful infringement of Plaintiff's federally registered "NUOVA

MURPHY, CAMPBELL, ALLSTON & QUINN

RICAMBI USA Term 1" trademark, to the substantial and irreparable injury of the public and of Plaintiff's business reputation and goodwill.

64.     Defendants' wrongful acts have caused and, unless restrained by this Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with Plaintiff's registered marks. Plaintiff has no adequate remedy at law.

**COUNT TWO**

**FEDERAL TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION**

65.     Plaintiff repeats and re-alleges Paragraphs 1 through 64 as if fully set forth herein.

66.     This is a claim for trademark infringement, false designation of origin and unfair competition arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), as follows:

(a) Defendants' unauthorized uses of Plaintiff's "NUOVA RICAMBI USA" Trademark constitutes willful trademark infringement, false designation of origin and unfair competition to the substantial and irreparable injury of the Plaintiff and of Plaintiff's business reputation and goodwill.

67.     Defendants' wrongful acts have caused and, unless restrained by this Court, will continue to cause serious irreparable injury and damage to Plaintiff and to the goodwill associated with Plaintiff's registered marks. Plaintiff has no adequate remedy at law.

**COUNT THREE**

**COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

68.     Plaintiff repeats and realleges Paragraphs 1 through 67 as if fully set forth herein.

69.     Defendants' unauthorized use of the "NUOVA RICAMBI USA" Trademark is likely to cause confusion, mistake and/or deception to the public and the trade as to the origin, source, sponsorship or quality of Plaintiff's goods and services in that the public and the trade will believe that Plaintiff's goods and services originate and/or are otherwise authorized by Defendants.

MURPHY, CAMPBELL, ALLSTON & QUINN

70.    Defendants' aforementioned acts were done with full knowledge of Plaintiff's prior rights in the "NUOVA RICAMBI USA" Trademark and with the full knowledge of the substantial reputation and goodwill associated with Plaintiff. Defendants have proceeded without a license or authority to use the "NUOVA RICAMBI USA" Trademark and/or to create an association with Plaintiff's "NUOVA RICAMBI USA" Trademark. By appropriating Plaintiff's nineteen years of goodwill in the "NUOVA RICAMBI USA" Trademark, Defendants will unjustly enrich themselves and cause damage to Plaintiff, as follows:

(a) Defendants' uses of the designation ""NUOVA RICAMBI", "NUOVA RICAMBI IRL", and "NR" " on or in connection with the names of espresso machine parts or accessories or Defendants' services constitute unauthorized use of Plaintiff's "NUOVA RICAMBI USA" Trademark, other symbols of origin and indicia of Plaintiff, and is likely to cause consumers to mistakenly believe that espresso machine parts or accessories or Defendants' services published with the indicia ""NUOVA RICAMBI", "NUOVA RICAMBI IRL", and "NR" " are affiliated or associated with Plaintiff and/or Plaintiff's "NUOVA RICAMBI USA" Trademark, or that Plaintiff, or the goods Plaintiff sells are affiliated or associated with Defendants.

(b) Defendants' use of the designation ""NUOVA RICAMBI", "NUOVA RICAMBI IRL", and "NR" " on or in connection with the Internet constitutes unauthorized use of Plaintiff's "NUOVA RICAMBI USA" Trademark, other symbols of origin and indicia of Plaintiff, and is likely to cause consumers to mistakenly believe that the espresso machine parts or accessories or Defendants' services offered for sale or sold with the indicia ""NUOVA RICAMBI", "NUOVA RICAMBI IRL", and "NR" " are affiliated or associated with Plaintiff or Plaintiff's "NUOVA RICAMBI USA" Trademark, or that Plaintiff is affiliated or connected with Defendants.

71.    Defendants' conduct is blatant, willful and intentional and is undertaken with the full knowledge of Plaintiff's prior, superior rights in its "NUOVA RICAMBI USA" Trademark.

72.     Defendants' conduct constitutes common law trademark infringement and unfair competition with Plaintiff which is causing immediate and irreparable harm to Plaintiff and to Plaintiff's goodwill. Plaintiff will continue to be damaged and the public will continue to be deceived unless Defendants are enjoined by this Court. Plaintiff has no adequate remedy at law.

### COUNT FOUR

### BREACH OF CONTRACT

73.     Plaintiff repeats and realleges paragraph 1 through 72 as if full set forth herein.

74.     Nuova Ricambi Italy breached the August 13, 1998 contract by not providing the trademark rights it promised to provide to Progressive, and instead using the trademark for its own benefit.

75.     Progressive performed all of its obligations under the contract

76.     As a consequence of the ongoing breach of contract by Nuova Ricambi Italy Progressive has suffered extensive damages in the form of diminution in the value of the tradename and goodwill sold in the contract, money time and effort expended in developing the value of the trademark over nineteen years, and a loss of business and subsequent loss of profit. The amount of these damages is increasing and will increase until an injunction issues. They will be proven at time of trial.

### COUNT FIVE

### UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE §17200 ET SEQ.

77.     Plaintiff repeats and realleges Paragraphs 1 through 76 as if fully set forth herein.

78.     Defendants' acts as above alleged are misleading in a material respect, and Plaintiff has suffered injury as a result.

79.     Defendants' aforesaid acts constitute unfair competition in violation of California Business & Professions Code §17200 Et Seq of the State of California.

COMPLAINT
DEMAND FOR JURY TRIAL

WHEREFORE, Plaintiff demands judgment as follows:

1. Awarding Plaintiff monetary relief on its Lanham Act claims, including Plaintiff's actual damages, Defendants' profits, Plaintiff's lost profits, statutory damages and treble damages as permitted under 15 U.S.C. § 1117 arising out of Defendants' acts of willful trademark infringement, false designation of origin, and unfair competition cybersquatting, in such amount as determined to be appropriate at trial;

2. Preliminarily and permanently enjoining Defendants, their employees, agents, licensees, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with any of them, including any entities controlled in whole or in part by Defendants or any entities created by Defendants in the future, pursuant to 15 U.S.C. § 1116 and California Law, from the following activities: (i) infringing Plaintiff's "NUOVA RICAMBI USA" Trademark; (ii) creating by any acts or devices, any impression that Defendants' goods or services have any association, connection or affiliation with Plaintiff or Plaintiff's "NUOVA RICAMBI USA" Trademarks; (iii) competing unfairly with Plaintiff; (iv) exploiting Plaintiff's identity for Defendants' commercial benefit without authorization, and specifically from:

   (a) imitating, copying or making unauthorized use of the "NUOVA RICAMBI USA" Trademarks;

   (b) directly or indirectly manufacturing, producing, distributing, selling, offering for sale, advertising, marketing, promoting or displaying any product or service bearing any unauthorized reproduction, copy or colorable imitation of the "NUOVA RICAMBI USA" Trademark;

   (c) using any unauthorized colorable imitation of the "NUOVA RICAMBI USA" Trademark in connection with the manufacture, distribution, production, sale, offer for sale, advertising, marketing, promotion or display of any product or service;

   (d) engaging in any other activity constituting unfair competition with Plaintiff, or constituting an infringement of any of the "NUOVA RICAMBI USA"

Trademark or of Plaintiff's rights therein, or their right to exploit such trademark; and

(e) engaging in any other conduct that is likely to cause confusion or to cause mistake or to deceive as to the source, affiliation, connection, or association of Plaintiff, Plaintiff's products or services with Defendants.

3. Directing that Defendants use their best efforts to recall from the trade, including any and all distributors, wholesalers, dealers, retailers and all other third parties, any and all infringing products bearing the ""NUOVA RICAMBI", "NUOVA RICAMBI IRL", and "NR" " mark and/or any and all products bearing any other mark that is confusingly similar to the "NUOVA RICAMBI USA" Trademarks, along with any and all marketing, sales, advertising and promotional materials used in connection therewith and/or in the performance of Defendants' business;

4. Directing that Defendants use their best efforts to contact all online retailers currently listing any espresso machine part or accessory with the designation ""NUOVA RICAMBI", "NUOVA RICAMBI IRL", or "NR" " and require such retailers to remove all references to ""NUOVA RICAMBI", "NUOVA RICAMBI IRL", and "NR" " from all such product listings, including but not limited to, www.sproparts.com, www.nuovaricambi.net (including all country code variations thereof);

5. Directing that Defendants file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of judgment a report in writing and under oath as provided in 15 U.S.C. § 1116 setting forth in detail the manner and form in which Defendants have complied with the requirements of the foregoing injunction and orders;

6. Directing that Defendants deliver up to Plaintiff for destruction or other disposition, within thirty (30) days after entry of judgment, any and all infringing goods or services and any marketing, sales, advertising and promotional materials used in connection therewith, now or hereafter in their possession, custody or control as provided in 15 U.S.C. § 1118;

COMPLAINT
DEMAND FOR JURY TRIAL

7.  Directing that Defendants account for all gains, profits and advantages derived from their acts of trademark infringement, false designation of origin, unfair competition, and for their other violations of law;

8.  Awarding Plaintiff compensatory damages, in the amount constantly increasing but at least $3,000,000 on its state law claims, the final amount to be determined at trial;

9.  Awarding Plaintiff its attorneys' fees, costs and disbursements incurred herein in view of Defendants' intentional and willful infringement, pursuant to 15 U.S.C. § 1117;

10. Awarding Plaintiff pre-judgment and post-judgment interest to the maximum extent permitted by law; and

11. Granting to Plaintiff such other relief as the Court may deem just and proper.

Respectfully submitted,

DATED:  December 18, 2017                    MURPHY, CAMPBELL, ALLISTON & QUINN

By:     _/s/ Mark A. Campbell_____
        Mark A. Campbell
        Suzanne M. Nicholson
        Attorneys for Progressive Marketing, Inc.

MURPHY, CAMPBELL, ALLISTON & QUINN

## **JURY DEMAND**

Progressive Marketing Inc. hereby demands a trial by jury on all issues in this matter.


DATED:  December 18, 2017          MURPHY, CAMPBELL, ALLISTON & QUINN


By:      _/s/ Mark A. Campbell_____
Mark A. Campbell
Suzanne M. Nicholson
Attorneys for Progressive

MURPHY, CAMPBELL, ALLISTON & QUINN

**EXHIBIT A**

AGREEMENT FOR PURCHASE AND SALE OF ASSETS

This agreement is made as of August, 13, 1998, at Concord, California, by and between Progressive Marketing, Inc., a California corporation, herein called "Buyer", having its principal office at 6011 Bayville Court, Granite Bay, California, and Nuova Ricambi USA, LLC, a California limited liability company, herein called "Seller", having its principal office at 1000 Detroit Avenue, Suite L, Concord, California.

Recitals

Buyer desires to purchase Seller's spare parts coffee equipment business and certain assets and Seller desires to sell such business and certain assets to Buyer, on the terms and subject to the conditions of this agreement.

Now therefore, the parties agree as follows:

1. Sale and transfer of Assets. Subject to the terms and conditions set forth in this agreement, Seller will sell, convey, transfer, assign, and deliver to Buyer, and Buyer will purchase from Seller, all the assets, inventory, customer list, tradename "Nuova Ricambi USA, LLC" and goodwill of the business listed in the attached Exhibit A (sometimes collectively referred to as the Assets).

2. Consideration from Buyer At Closing. The purchase price for said Assets shall be the sum of one hundred forty thousand dollars ($140,000.00). Closing, in accordance with the provisions of paragraph 12. Buyer's check shall be a bank cashier's check.

3. Allocation of purchase price. The purchase price of the Assets will be as specified in Exhibit A.

Each of the parties agree to report this transaction for federal and state tax purposes in accordance with this allocation of the purchase price.

4. Sales and Personal Property Taxes. Buyer will pay all sales and use taxes arising from the transfer of the Assets and Seller will pay for any state and local personal property taxes of the business. Seller shall be solely responsible for, and timely pay, all taxes of any type related to its business which arises from operation of the business on or prior to the closing date (other than sales tax arising from this transaction), and any penalties or interest thereon, including without limitation any business, occupation, withholding, employment, sales, income or other tax.

5. No Liabilities. Buyer assumes no liabilities or obligations of Seller. Seller shall be solely responsible for paying any and all

1

CL000034

liabilities or obligations arising from its business, whether incurred before or after the closing date.

6. **Representations of Seller.** Seller represents that:

a) Seller is a limited liability company duly organized, validly existing, and in good standing under the laws of California and has all necessary powers to own its properties and operate its business as now owned and operated by it.

b) The assets, inventory, customer list and goodwill listed on Exhibit A are the property of Seller. No items are subject to security interest.

c) Seller has the right, power, legal capacity, and authority to enter into and perform its respective obligations under this agreement. The execution and delivery of this agreement by Seller has been duly authorized by all necessary action on the part of Seller.

7. **Representations of Buyer.** Buyer represents that:

a) Buyer is a corporation duly organized, existing, and in good standing under the laws of California. The execution and delivery of this agreement and the consummation of this transaction by Buyer have been duly authorized, and no further corporate authorization is necessary on the part of Buyer.

b) No consent, approval, or authorization of, or declaration, filing, or registration with, any United States federal or state governmental or regulatory authority is required to be made or obtained by Buyer in connection with the execution, delivery, and performance of this agreement and the consummation of the transactions contemplated by this agreement.

8. **Conduct of Business.** Pending consummation of this agreement Seller will carry on its business and activities diligently and in substantially the same manner as it previously has been carried out and will not substantially change its inventory levels or make or institute any unusual or novel methods of manufacture, purchase, sale, lease, management, accounting, or operation that vary materially from those methods used by Seller on the date of this agreement.

9. **Representations True As of Closing.** All representations of Seller set forth this agreement will also be true and correct as of the closing date as if made on that date, except to the extent that any of them may become untrue because of events beyond the control of Seller, who is unable to make them true as of the closing date despite its best efforts to do so.

10. **Resale Certificate.** Buyer will furnish any resale certificate or other documents reasonably requested by Seller to

2

CL000035

comply with the provisions of the sales and use tax laws of the State of California.

11.   Buyer Waives Compliance With Bulk Sales Law.   Buyer waives compliance with the provisions of the California Commercial Code relating to bulk transfers in connection with this sale of assets, subject to the indemnities of Seller contained in this agreement. Nothing in this paragraph will prevent Buyer from asserting as a bar or defense to any action or proceeding brought under that law that it does not apply to the sale contemplated by this agreement.

12.   Time and Place of Closing.   The transfer of the Assets by Seller to Buyer (the Closing) will take place at the offices of Nuova Ricambi USA, LLC, 1000 Detroit Avenue, Suite L, Concord, California at 10:00 a.m. local time, on ____8/13/98____, or at such other time and place as the parties may agree to in writing (the closing date).

13. Seller's Obligation At Closing.   At the closing, Seller must deliver or cause to be delivered to Buyer:

   a). A Bill of Sale and transfer of all the assets listed in Exhibit A.

   b) Simultaneously with the consummation of the transfer, Seller, through its officers, agents, and employees, will put Buyer into full possession and enjoyment of all properties and assets to be conveyed and transferred by this agreement.   At Buyer's risk of loss, Buyer will be permitted to store the Assets purchased at Seller' premises at 1000 Detroit Avenue, Suite L, Concord, California rent-free until 5:00PM on September 20, 1998. If the Assets are not removed by 5:00PM on September 20, 1998, Buyer shall be liable for rent or damages caused by holding over at such premises.

   c) Certified resolutions of Seller, in a form satisfactory to counsel for Buyer, authorizing the execution and performance of this agreement and all actions to be taken by Seller under this agreement;

14.   Buyer's Obligation At Closing.   At the Closing, Buyer must deliver to Seller the following instruments and documents against delivery of the items specified in paragraph 12.

   a) A bank cashier's check in the amount of one hundred forty thousand dollars ($140,000.00).

   b) Certified resolutions of Buyer's board of directors, in a form satisfactory to counsel for Seller, authorizing the execution and performance of this agreement and all actions to be taken by Buyer under this agreement;

15.   Change of Name.   Within sixty (60) days after the closing date, Seller will take all action required to change its name.

CL000036

16.   Covenant Not To Compete.   Seller agrees not to compete in United States of America directly or indirectly with Buyer or to own any interest in or participate in any business that competes with Buyer in the spare parts coffee equipment business.   This covenant shall continue for three years.

17.   Seller's Indemnity. Seller must indemnify and hold harmless Buyer against, and in respect of, claims, losses, expenses, costs, obligations, and liabilities it may incur by reason of Seller's breach of or failure to perform any of its representations or commitments in this agreement, or by reason of any act or omission of Seller, or any of its successors or assigns, prior to the closing date, that constitutes a breach or default under this agreement.   Seller's liability under this paragraph will not, however, exceed the aggregate amount of $5,000.00.

18.  Seller's Right to Defend.  Buyer will promptly notify Seller of the existence of any claim, demand, or other matter to which Seller's indemnification obligations would apply, and will give it a reasonable opportunity to defend the same at its own expense and with counsel of its own selection; provided that Buyer will at all times also have the right to participate fully in the defense at its own expense. If, within a reasonable time after this notice, Seller fails to defend, Buyer will have the right, but not the obligation, to undertake the defense of, and to compromise or settle (exercising reasonable business judgment), the claim or other matter on behalf and at the risk of Seller. If the claim is one that cannot by its nature be defended solely by Seller (including any federal or state tax proceeding), Buyer will make available all information and assistance that Seller may reasonably request.

19.  Buyer's Indemnity.  Buyer must indemnify and hold harmless Seller against, and in respect of, claims, losses, expenses, costs, obligations, and liabilities it may incur by reason of Buyer's breach of or failure to perform any of its representations or commitments in this agreement, or by reason of any act or omission of Buyer, or any of its successors or assigns, after the closing date, that constitutes a breach or default under this agreement. Buyer's liability under this paragraph will not, however, exceed the aggregate amount of $5,000.00.

20.  Buyer's Right to Defend.  Seller will promptly notify Buyer of the existence of any claim, demand, or other matter to which Buyer's indemnification obligations would apply, and will give it a reasonable opportunity to defend the same at its own expense and with counsel of its own selection; provided that Seller will at all times also have the right to participate fully in the defense at its own expense. If, within a reasonable time after this notice, Buyer fails to defend, Seller will have the right, but not the obligation, to undertake the defense of, and to compromise or settle (exercising reasonable business judgment), the claim or other matter on behalf and at the risk of Seller. If the claim is

4

CL000037

one that cannot by its nature be defended solely by Buyer (including any federal or state tax proceeding), Seller will make available all information and assistance that Buyer may reasonably request.

21.   No Representations.   Buyer agrees with and represents to Seller that said Assets and said business have been inspected by Buyer, and that said Assets and said business are being purchased by Buyer as a result of such inspection and not as a result of any representations made by Seller or by any agent of Seller.   Except as provided in paragraphs 17 and 19, Buyer and Seller hereby expressly waives any and all claims for damages or for rescission or cancellation of this contract because of any representations made by Buyer or Seller, or any agent of Buyer or Seller, other than the representations contained in this agreement.

22.   No Broker or Finder's Fee.   Each party warrants that it has dealt with no broker or finder in connection with any transaction contemplated by this agreement, and, as far as it knows, no broker or other person is entitled to any commission or finder's fee in connection with any of these transactions.

23.   Expenses.   Each party will pay all costs and expenses incurred or to be incurred by it in negotiating and preparing this agreement and in closing and carrying out the transactions contemplated in this agreement.

24.   Headings.   The subject headings of the paragraphs and subparagraphs of this agreement are included for convenience only and will not affect the construction or interpretation of any of its provisions.

25.   Word Usage.   Unless the context clearly requires otherwise:

     a. Plural and singular numbers will each be considered to include the other;

     b. The masculine, feminine, and neuter genders will each be considered to include the others;

     c. "Shall," "will," "must," "agree," and "covenants" are each mandatory;

     d. "May" is permissive;

     e. "Or" is not exclusive; and

     f. "Includes" and "including" are not limiting.

26.   Entire Agreement, Modifications, Waiver.   This agreement constitutes the entire agreement between the parties pertaining to the subject matter contained in it and supersedes all prior and contemporaneous agreements, representations, and understandings of the parties. No supplement, modification, or amendment of this

5

agreement will be binding unless executed in writing by all the parties. No waiver of any of the provisions of this agreement will be considered, or will constitute, a waiver of any other provision, and no waiver will constitute a continuing waiver. No waiver will be binding unless executed in writing by the party making the waiver.

27.  Counterparts.  This agreement may be executed simultaneously in one or more counterparts, each of which will be considered an original, but all of which together will constitute one and the same instrument.

28.  Parties In Interest.  Nothing in this agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this agreement on any persons other than the parties to it and their respective successors and assigns; nothing in this agreement is intended to relieve or discharge the obligation or liability of any third persons to any party to this agreement; and no provision will give any third persons any right of subrogation or action against any party to this agreement.

29.  Assignment.  This agreement will be binding on, and will inure to the benefit of, the parties to it and their respective heirs, legal representatives, successors, and assigns, provided that Buyer may not assign any of its rights under this agreement except to a wholly owned subsidiary corporation of Buyer. No such assignment by Buyer to its wholly owned subsidiary will relieve Buyer of any of its obligations or duties under this agreement.

30.  Arbitration.  Any controversy or claim arising from or relating to this agreement, or its making, performance, or interpretation, will be settled by arbitration in San Francisco, California under the commercial arbitration rules of the American Arbitration Association then existing. Judgment on the arbitration award may be entered in any court having jurisdiction over the subject matter of the controversy.  Arbitrators will be persons experienced in negotiating, making, and consummating acquisition agreements.

31.  Recovery of Litigation Cost.  If any legal action, arbitration, or other proceeding is brought for the enforcement of this agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this agreement, the successful or prevailing party or parties will be entitled to recover reasonable attorney fees and other costs incurred in that action or proceeding, in addition to any other relief to which they may be entitled.

32.  Representations and Obligations Expire Six Months After Closing.  The representations made by the parties to this agreement, and their respective obligations to be performed under its terms at or before the closing date, will expire with, and be terminated and extinguished, six (6) months after the closing date, unless a specific claim in writing with respect to these

6

CL000039

matters is made, or an action at law or in equity is commenced or filed before that date. This paragraph will not affect any obligation of any party under this agreement that is permitted to be performed, in whole or in part, after the closing date.

33. Notices. All notices, requests, demands, and other communications under this agreement must be in writing and will be considered to have been duly given on the date of service if served personally on the party to whom notice is to be given, or on the second day after mailing if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid, and properly addressed as follows:

To Seller:     Silvano Meconi
               1000 Detroit Avenue, Suite L
               Concord, CA 94518

To Buyer:      Gene Lemos
               Progressive Marketing, Inc.
               6011 Bayville Court
               Granite Bay, CA 95746

Any party may change its address for purposes of this paragraph by giving the other parties written notice of the new address in the manner set forth above.

34. Governing Law. This agreement will be construed in accordance with, and governed by, the laws of the State of California as applied to contracts that are executed and performed entirely in California.

35. Severability. If any provision of this agreement is held invalid or unenforceable by any court of final jurisdiction, it is the intent of the parties that all other provisions of this agreement be construed to remain fully valid, enforceable, and binding on the parties.

36. Acceptance of Facsimile Signature. The parties agree that this agreement, and related documents to be entered into in connection with this agreement will be considered signed when the signature of a party is delivered by facsimile transmission. Such facsimile signature shall be treated in all respects as having the same effect as an original.

/
/
/
/
/
/
/
/

7

IN WITNESS WHEREOF, the parties to this agreement have duly executed it on the day and year first above written.

Progressive Marketing Inc., Buyer

_____
Gene Lemos, President

_____
Deborah F. Lemos, Secretary

Nuova Ricambi USA, LLC, Seller

_____
Silvano Meconi, Manager

_____
Marcello Zanesi, Manager

8

**EXHIBIT B**

BILL OF SALE

Nuova Ricambi USA, LLC, herein called "Seller", declares that

Recitals

Whereas, Seller is the owner of that certain business, known as Nuova Ricambi USA, LLC at 1000 Detroit Avenue, Suite L Concord, California,

Whereas, Seller on _8/13/98_ did enter into an agreement to sell said business and certain assets to Progress Marketing, Inc., herein called "Buyer"

1. In consideration of the faithful performance of said agreement by Buyer and the payment and delivery to Seller of all the moneys and instruments specified in said agreement to be paid and delivered to Seller by Buyer, receipt of which is hereby acknowledged by Seller, Seller hereby sells, assigns, and transfers to Buyer the following described property attached as Exhibit A.

2. Seller represents it has free and clear title to the assets listed in Exhibit A.

Executed on _8/13/98_ at _CONCORD, CA_, California.

Nuova Ricambi USA, LLC


Silvano Meconi, Manager


Marcello Zanesi, Manager

Nuova Ricambi USA
Exhibit A


LIST OF ASSETS SOLD


| | | |
|---|---|---|
| 1. 2 desks | $ | 60 |
| 2. 8 chairs | | 80 |
| 3.1 computer desk | | 40 |
| 4. 1 office shelf | | 20 |
| 5. 4 filing cabinets | | 30 |
| 6. 1 mini refrigerator | | 40 |
| 7. 1 warehouse table | | 10 |
| 8. 2 fans | | 30 |
| 9. 1 digital acale | | 50 |
| 10.  1 warehouse cart | | 30 |
| 11.  various warehouse supplies | | 110 |
| (boxes, plastic bags, sealing tape, etc.) | | |
| 12.  1 computer Packard Bell (tower, keyboards, monitor) | | 1,500 |
| 13  1 computer AT&T (tower, keyboards) Mitac (monitor) | | 1,000 |
| 14.  1 printer HP Deskjet 870Cse | | 300 |
| 15.  1 printer EPSON LQ 570+ | | 200 |
| 16.  Software BusinessWorks by State of Art with | | 2,000 |
| Premium Client Care support service | | |
| 17.  1 fax machine | | 100 |
| 18.  20 warehouse shelves 4x2x8 | | 2,000 |
| 19.  spare parts inventory | | 62,400 |
| 20.  400 customers list | | 40,000 |
| 21.  "Nuova Ricambi USA, LLC" | | |
| tradename and goodwill of business | | 30,000 |


TOTAL PRICE                              $140,000

CL000026

**EXHIBIT C**

12-88-1998 17:14     02 92157705          NUOVA RICAMBI SNC          P. 01

# NUOVA RICAMBI S.N.C.

Via Dei Mille, 20
20061 Carugate (Milano)
Telefono 02-9253205 • 9254434 Fax 02-9254286
HTTP://space.tin.it/economia/mazanesi

C.F    05875190158
P.IVA  00807700968
CCIAA    1065456
N.MECC MI 011979

Subject: AGREEMENT U.S.A. MARKET

The firm Nuova Ricambi snc, located at Via Dei Mille, 20 - 20061 Carugate ( MI ) - Italy, reserves the exclusive for the U.S.A. market to the firm Progressive Marketing inc. DBA Nuova Ricambi U.S.A.

The sale condition reserved from Nuova Ricambi snc/Italy to Progressive Marketing inc. DBA Nuova Ricambi U.S.A are the following:

- DISCOUNT 57,5% ( 50%+15% ) ON OUR VALID GENERAL PRICE LIST
- PAYMENT : LETTER OF CREDIT IRREVOCABLE AND CONFIRMED 60 DAYS
            AT THE END OF THE MONTH.
- DELIVERY OF GOODS: EXWORKS FACTORY.

We also authorize Progressive Marketing inc. DBA Nuova Ricambi U.S.A to use our original catalog and price list for the purpose of making your own and we will supply all technical assistance that you will need.

We reserve the right  to supply directly from Italy the customers listed below:

LA MARZOCCO INTERNATIONAL
ARMANDO ESPRESSO

Progressive Marketing inc. DBA Nuova Ricambi U.S.A will be obligate to:

1) buy all the products available on the catalog only from Nuova Ricambi snc/Italy at the discount of 57,5% on Nuova Ricambi snc/Italy price list.
2) buy per year Italian Lire 250.000.0000= minimum of our products.

THE PRESENT AGREEMENT IS VALID FOR 3 YEARS, RENEWABLE AUTOMATICALLY EXCEPT CANCELLATION BY ONE OF THE TWO PARTS. ( BY WRITTEN NOTICE GIVEN NOT MORE THAN 30 DAYS PRIOR TO THE EXPIRATION DATE. )

Nuova Ricambi snc/Italy

DATE   8/13/98

SIGNATURE

Progressive Marketing inc.
DBA Nuova Ricambi U.S.A

DATE   8/13/98

SIGNATURE

CL000033

**EXHIBIT D**

# United States of America

## United States Patent and Trademark Office

## NUOVA RICAMBI USA

**Reg. No. 3,873,210**

**Registered Nov. 9, 2010**

**Int. Cl.: 11**

**TRADEMARK**

**PRINCIPAL REGISTER**

PROGRESSIVE MARKETING, INC. (CALIFORNIA CORPORATION)
4125 DEL MAR AVENUE
SUITE 3
ROCKLIN, CA 95677

FOR: PARTS FOR ESPRESSO AND OTHER ITALIAN COFFEE MACHINES, NAMELY, TOUCH PADS, AUTOFILL CONTROL BOXES, FLOW METERS, CENTRAL PROCESSING UNITS, SWITCHES, PUMPS, MOTORS, GASKETS, O-RINGS, HEATING ELEMENTS, CLEANING BRUSHES AND SUPPLIES, VALVES, TAMPERS, STEAMING SWITCHES, MEASURING DEVICES, SCALES, FITTINGS, AUTOMATIC FROTHING UNITS, BACKFLUSH ITEMS, GRINDERS, PORTOFILTERS AND FILTERS, IN CLASS 11 (U.S. CLS. 13, 21, 23, 31 AND 34).

FIRST USE 9-0-1995; IN COMMERCE 9-0-1995.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-TICULAR FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "RICAMBI" , APART FROM THE MARK AS SHOWN.

THE ENGLISH TRANSLATION OF "NUOVA RICAMBI" IN THE MARK IS "NEW PARTS".

SEC. 2(F).

SER. NO. 85-002,450, FILED 3-30-2010.

LEIGH CAROLINE CASE, EXAMINING ATTORNEY



*Director of the United States Patent and Trademark Office*